# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANGEL C. LOVATO,

       Plaintiff,

    vs.                              Civ. No. 20-55  JFR

ANDREW SAUL, Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Docs. 15, 16)[2] filed April 23, 2020, and May 19, 2020, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed June 25, 2020.  Doc. 19.  Defendant filed a Response on August 20, 2020.  Doc. 21.  And Plaintiff filed a Reply on September 9, 2020.  Doc. 22.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

## I.  Background and Procedural Record

Plaintiff Angel C. Lovato (Ms. Lovato) alleges that she became disabled on May 3, 2017, at the age of fifty-five, because of bilateral torn meniscus, right knee fractured patella, and

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Doc. 13.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 15), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

bilateral lateral epicondylitis.[3]  Tr. 32, 187, 190.  Ms. Lovato completed high school and worked

as a loan servicing representative for twenty-one years.  Tr. 191, 352-59.  Ms. Lovato stopped

working on September 13, 2016, because of her medical conditions.  Tr. 190.

On October 4, 2016, Ms. Lovato protectively filed an application for Social Security

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42

U.S.C. § 401 *et seq*., and for Supplemental Security Income ("SSI") under Title XVI of the Act,

42 U.S.C. § 1381 et seq.  Tr. 162-63, 165-73.   On January 10, 2017, Ms. Lovato's applications

were denied.  Tr. 66-75, 77, 96-99.  They were denied again at reconsideration on July 13, 2017.

Tr. 78-90, 91, 101-03.  Upon Ms. Lovato's request, Administrative Law Judge (ALJ) Ben

Ballengee held a hearing on September 11, 2018.  Tr. 28-65.  Ms. Lovato appeared in person at

the hearing with attorney representative Aida Medina Adams.  *Id*.  On March 29, 2019, ALJ

Ballengee issued an unfavorable decision.  Tr. 12-23.  On November 18, 2019, the Appeals

Council issued its decision denying Ms. Garza's request for review and upholding the ALJ's

final decision.  Tr. 1-5.  On January 17, 2020, Ms. Lovato timely filed a Complaint seeking

judicial review of the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.      Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

---

[3] Ms. Lovato initially alleged an onset date of September 13, 2016, but amended it at the Administrative Hearing.  Tr. 32-33.  Ms. Lovato explained that she amended the alleged onset date to May 3, 2017, her birthday, because she turned 55 on that date and believed GRID Rule 201.06 could be applied.  *Id., Doc. 22 at 2.

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B.  Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking

4

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

## III.  <u>Analysis</u>

The ALJ made his decision that Ms. Lovato was not disabled at step four of the sequential evaluation.  Tr. 22-23.  The ALJ determined that Ms. Lovato met the insured status requirements of the Social Security Act through December 31, 2021, and that she had not engaged in substantial gainful activity from her alleged onset date of May 3, 2017.  Tr. 25.  She found that Ms. Lovato had severe impairments of obesity, bilateral chondromalacia patella, bilateral lateral epicondylitis, cervical degenerative disc disease, and lumbar scoliosis.  Tr. 17.  The ALJ also found that Ms. Lovato had nonsevere impairment of mixed anxiety and depressed mood.  Tr. 17-18.  The ALJ determined, however, that Ms. Lovato's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 18-19.  Accordingly, the ALJ proceeded to step four and found that Ms. Lovato had the residual functional capacity to perform sedentary work, except that she can

> occasionally climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds.  She can occasionally stoop, kneel, crouch, and crawl.  She can occasionally be exposed to unprotected heights; moving mechanical parts; extreme cold; and vibration.

Tr. 19.  Based on the RFC assessment and testimony of the VE, the ALJ determined that Ms. Lovato could perform her past relevant work.  Tr. 23.  The ALJ, therefore, concluded that Ms. Lovato was not disabled.  Tr. 23.

In support of her Motion, Ms. Lovato argues that (1) the ALJ erred in assessing Ms. Lovato's physical RFC because she (i) failed to refer to any medical records regarding Ms. Lovato's bilateral lateral epicondylitis and bilateral chondromalacia patella; (ii) failed to perform a function-by-function assessment as it relates to those severe impairments; and (iii)

failed to consider the impact of Ms. Lovato's pain on her ability to perform work-related physical activities; (2) the ALJ failed to incorporate into Ms. Lovato's mental RFC that she was assessed as moderately limited in her ability to complete a normal workday or workweek without interruption from psychological based symptoms and perform at a consistent pace without unreasonable number and length of rest periods; and (3) the ALJ failed to properly weigh and evaluate Dr. Quynh-Bui's opinion.  Doc. 19 at 7-18.

For the reasons discussed below, the Court finds that the ALJ failed to provide an adequate narrative discussion describing how the evidence supports his conclusions with citations to specific medical facts and nonmedical evidence when determining Ms. Lovato's physical RFC.  The Court also finds that the ALJ failed to account for Ms. Lovato's moderate limitation in her ability to perform work-related mental activities.  The ALJ's RFC assessment, therefore, is not supported by substantial evidence.  As such, this case requires remand.

A.   **RFC Assessment**

1.   **Legal Standard**

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding)[5].  In assessing a claimant's RFC, the ALJ must consider the combined

---

[5] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to

effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3). The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion. 20 C.F.R. § 404.1527(b)[6]; SSR 96-8p, 1996 WL 374184, at *7. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

## 2. The ALJ Failed to Adequately Address Any Manipulative Limitations Based On Ms. Lovato's Bilateral Lateral Epicondylitis

Ms. Lovato first argues that the ALJ erred in assessing Ms. Lovato's physical RFC because he failed to refer to any medical records regarding Ms. Lovato's bilateral lateral epicondylitis. Doc. 19 at 7-10. Ms. Lovato argues that the medical evidence record supports that

---

the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017. 82 Fed. Reg. 5844, 5845, 5867, 5869.

[6] The rules in this section apply for claims filed *before* March 27, 2017. 20 C.F.R. § 404.1527.

she has pain and decreased grip strength due to bilateral lateral epicondylitis which forecloses her ability to handle and finger bilaterally.  *Id.*  Had the ALJ properly considered this severe impairment and assessed manipulative limitations as supported by the record, Ms. Lovato argues she would have been found disabled under Rule 201.60 of the Medical Vocational Guidelines.

The Commissioner contends that the ALJ reasonably evaluated and recognized Ms. Lovato's alleged elbow symptoms, and acknowledged that shortly before the relevant period of time at issue here Dr. Anthony Reeve, the doctor who treated Ms. Lovato's elbows (and knees) as part of her workers' compensation claim, indicated Ms. Lovato could do light duty work.  Doc. 21 at 8-10.  The Commissioner further contends that Ms. Lovato relies on medical evidence outside of the relevant period of time, and that during the relevant period of time, the medical evidence record does not reflect any treatment for elbow (or knee) symptoms.  *Id.*  The Commissioner asserts that the medical evidence record during the relevant period of time demonstrates that Ms. Lovato engaged in cardiovascular exercise and that treatment notes reflected normal gait, coordination, strength and reflexes.  *Id.*  The Commissioner further contends that the medical opinion testimony supports that Ms. Lovato could perform sedentary work during the relevant period of time.  *Id.*

In her Reply, Ms. Lovato asserts that Dr. Reeve's evaluation of Ms. Lovato's maximum medical improvement ("MMI") is not predicated on the elimination of symptoms and/or subjective complaints, and that an assignment of light duty in the workers' compensation context does not necessarily translate into light duty restrictions for Social Security disability purposes.  Doc. 22 at 2-3.  Ms. Lovato also asserts that Dr. Reeve indicated Ms. Lovato suffered with chronic pain.  *Id.*

8

Here, the ALJ determined at step two that Ms. Lovato had a severe impairment of bilateral lateral epicondylitis. Tr. 17. In considering the effect of this severe impairment on Ms. Lovato's physical RFC as he was required to do, the ALJ appears to have relied primarily on Dr. Reeve's February 23, 2017, impairment rating in which he assessed a "final impairment rating" of 4% whole body, and functional capacity evaluation which placed Ms. Lovato into the permanent restriction of light duty work. Tr. 20, 433. In his report, Dr. Reeve described light duty work, without more, as "20 pounds occasional duty and 10 pounds frequently." Tr. 433.

Ms. Lovato presented to Dr. Reeve on March 10, 2016, for treatment related to chronic bilateral elbow pain. Tr. 453-54. Ms. Lovato was already established with Dr. Reeve, as he was treating her for an injury she sustained to both of her knees while at work on December 28, 2015.[7] Ms. Lovato told Dr. Reeve that she had reported elbow pain to her employer in 2015 and 2016 which she attributed to chronic repetitive activity (typing) at work. *Id.* Upon exam, Dr. Reeve found that Ms. Lovato's elbow pain was consistent with bilateral lateral epicondylitis and bilateral medial epicondylitis and referred Ms. Lovato for physical therapy. *Id.* Following physical therapy, Ms. Lovato continued to see Dr. Reeve for elbow pain, received cortisone injections, and continued to complain of pain. Tr. 441, 444-46, 447-48. On December 14, 2016,

---

[7] Ms. Lovato first presented to Dr. Anthony Reeve of Industrial Rehabilitation Clinics-Albuquerque on December 28, 2015, after slipping and falling onto both of her knees while at work. Tr. 463-64. X-rays at that time demonstrated no evidence of fracture and Dr. Reeve referred Ms. Lovato for physical therapy. Tr. 312-25, 461-62. On January 29, 2016, after eight skilled physical therapy sessions, it was noted that Ms. Lovato had improved minimally and had not been able to progress due to pain. Tr. 326-27. Dr. Reeve then referred Ms. Lovato for an MRI which demonstrated meniscus tears and chondral deficits. Tr. 457-58. Dr. Reeve referred Ms. Lovato for an orthopedic surgical consult. Tr. 457-58. On March 1, 2016, Paul M. Legant, M.D., CIME, evaluated Ms. Lovato, diagnosed anterior knee contusion, and did not recommend surgical intervention. Tr. 362-64. On March 9, 2016, Dr. Reeve recommended Ms. Lovato undergo a series of platelet rich plasma injections. Tr. 455-56. If not, he planned to wait six weeks and refer Ms. Lovato for a second surgical opinion if she did not improve. *Id.* On March 29, 2016, Dr. Reeve referred Ms. Lovato for a second surgical opinion. Tr. 451-52. Dr. Reeve continued to treat Ms. Lovato for chronic knee pain. Tr. 439-40, 442-43, 445-46, 449-50. On November 29, 2016, William L. Ritchie, IV, M.D., evaluated Ms. Lovato's ongoing knee pain and concurred with Dr. Legant that Ms. Lovato was not a surgical candidate. Tr. 365-66. On December 13, 2016, Dr. Reeve noted that Ms. Lovato's condition was stable, but that she remained in a lot of pain. Tr. 436-38.

Dr. Reeve noted that Ms. Lovato continued to have pain and tenderness over the lateral epicondyle with decreased grip strength.  Tr. 435.  On February 23, 2017, Dr. Reeve assessed as to Ms. Lovato's right elbow that she continued to have pain and tenderness over the right lateral and medial aspect of the elbow; she experienced pain to palpation and with extension; and she had a positive Tinel sign.  Tr. 431. As for her left elbow, Dr. Reeve noted pain and tenderness over the medical and lateral epicondyle, with the positive Tinel sign over the cubital tunnel.  *Id.* Dr. Reeve also indicated pain in the left elbow with mobilization.  *Id.*

The Commissioner correctly notes that medical records *after* Ms. Lovato's amended alleged onset date fail to mention Ms. Lovato's alleged ongoing pain due to bilateral lateral epicondylitis.[8]  That said, the ALJ nonetheless relied on evidence from shortly *before* the amended alleged onset date to assess that Ms. Lovato in fact had a severe impairment of bilateral lateral epicondylitis.  "Evidence outside the relevant time period may be considered to the extent that it assists the ALJ in determining disability during the relevant time period." *Overstreet v. Astrue*, 2012 WL 996608, at *9 (N.D. Okla. Mar. 23, 2012) (unpublished) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)).  Moreover, the ALJ relied on Dr. Reeve's functional capacity assessment, prepared shortly *before* the amended alleged onset date, to determine that Ms. Lovato's bilateral lateral epicondylitis was not disabling and that Ms. Lovato was capable of light duty work "on or about the alleged onset date of disability."  Tr. 20.  As such, whether the ALJ sufficiently considered and discussed Dr. Reeve's functional capacity assessment and supporting medical record evidence in making his RFC determination, and

---

[8] On December 6, 2017, Ms. Lovato presented to Presbyterian Pan American Family Practice with complaints of cervical and lumbar spine pain following a motor vehicle accident on November 19, 2017.  Tr. 471-510.  The medical records during the relevant period of time primarily document Ms. Lovato's care and treatment for cervical and lumbar spine pain as a result of the motor vehicle accident.  Tr. 511-49, 550-92, 610-11, 613-622, 625.

whether the ALJ's reliance on same is supported by substantial evidence, are properly before this Court.

As an initial matter, the Court notes that another agency's decision regarding whether a claimant is disabled is not binding on the SSA.  20 C.F.R. § 404.1504 (effective through March 26, 2017).  Other agencies apply different rules and standards than the SSA for determining whether an individual is disabled, and "this may limit the relevance of a determination of disability made by another agency." SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006).[9]  For example, pursuant to social security regulations, light work involves lifting no more than 20 pounds at a time and 10 pounds frequently, *and involves a good deal of walking or standing*.  20 C.F.R. §§ 404.1567(b) and 416.967(b).  Dr. Reeve's functional capacity evaluation does not address this aspect of light work.  Additionally, in determining a claimant's RFC, the ALJ is charged with determining not just a claimant's exertional capacity, *i.e.,* sitting standing, walking, lifting, carrying, pushing and pulling, the ALJ also is charged with determining a claimant's nonexertional capacity in light of their severe impairments, *i.e.,* stooping, climbing, reaching, handling, seeing, hearing, and speaking, as well as their ability to do work-related mental activities.  *See* SSR 96-8p, 1996 WL 374184, at *5-6.  Dr. Reeve's functional capacity evaluation did not take into account any of these considerations.

Notably, despite the ALJ's finding that Ms. Lovato was capable of light duty work based on Dr. Reeve's functional capacity evaluation (Tr. 20), the ALJ's RFC assessment limited Ms. Lovato to sedentary work.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding that an ALJ does not commit reversible error by electing to temper findings for the

---

[9] SSR 06-03p was rescinded and does not apply to claims filed on or after March 27, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017); 2017 WL 3928297 (Apr. 6, 2017).

claimant's benefit).  However, limiting Ms. Lovato to sedentary work only addresses Ms. Lovato's exertional capacity and does not fully account for Ms. Lovato's nonexertional capacity.  And while the ALJ's RFC did assess certain postural and environmental limitations,[10] there is no evidence in the determination that the ALJ considered, and he certainly did not discuss, any manipulative limitations based on the objective findings within Dr. Reeve's functional capacity assessment that Ms. Lovato had positive Tinel sign in both elbows, pain and tenderness with mobilization and extension, and that she required future medical management for chronic pain related to her elbows.  Tr. 431, 433.

Finally, the ALJ's insufficient discussion of Dr. Reeve's medical record evidence is not harmless error.  The Court applies harmless error where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005).  Here, the VE testified that if Ms. Lovato were limited to occasional handling and fingering bilaterally, there would be no unskilled or transferable skilled jobs for her to perform in the national economy.  Tr. 63.  As such, the ALJ's failure to address and discuss those parts of Dr. Reeve's assessment that arguably support nonexertional manipulative limitations is not harmless.

---

[10] Neither of the nonexamining State Agency medical consultants assessed any postural or environmental limitations. *See* Tr. 73, 86-87.  Further, the ALJ offers no explanation in his determination for how he assessed these limitations; *i.e.,* whether they were based on Ms. Lovato's obesity, bilateral chondromalacia patella, cervical degenerative disc disease or lumbar scoliosis, or some combination of all these assessed severe impairments.

3.    **The ALJ Failed to Account for the Moderate Limitation Assessed By Examining State Agency Psychological Consultant Valerie A. Valle, Psy.D.**

As for Ms. Lovato's mental RFC, she explains that examining State Agency psychological consultant Valerie A. Valle, Psy.D., conducted a psychological evaluation and assessed that Ms. Lovato was moderately limited in her ability to complete a normal workday or workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and lengths of rest periods due to elbow pain. *Id.* Ms. Lovato argues that the ALJ accorded Dr. Valle's opinion great weight, yet failed to incorporate this assessed mental limitation into her RFC assessment or explain why he did not. *Id.*

The Commissioner contends that the ALJ reasonably found that Ms. Lovato's mental impairments caused no more than minimal limitation in her ability to work. Doc. 21 at 10-11. The Commissioner notes that Ms. Lovato did not allege a mental impairment in her applications, but that the ALJ nonetheless considered Ms. Lovato's anxiety in evaluating the disability claim. *Id.* The Commissioner asserts that Dr. Valle indicated that Plaintiff had only mild limitations due to her mental condition, which was subsequently supported by nonexamining State Agency psychological consultant Suzanne Castro, Psy.D. *Id.* The Commissioner also asserts that Dr. Valle's assessed moderate limitations in Ms. Lovato's reliability and productivity were reportedly due to elbow pain, which Dr. Valle, as a psychologist, was not qualified to assess.

Here, the ALJ accorded great weight to all of the opinion evidence related to Ms. Lovato's ability to do work-related mental activities.[11] Tr. 22. In doing so, however, the

---

[11] On January 10 2017, nonexamining State Agency psychological consultant Mark McGaughey, Ph.D., assessed that Ms. Lovato had no significant functional limitations related to her mental impairments of affective disorder and anxiety-related disorder. Tr. 70-71.   On July 10, 2017, nonexamining State Agency psychological consultant Suzanne

ALJ failed to discuss that Dr. Valle assessed that Ms. Lovato was moderately limited in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods" due to elbow pain.  Tr. 467-68.  "[A] moderate impairment is not the same as no impairment at all."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  Moreover, as stated in POMS § DI 25020.010, the mental abilities needed to understand, carry out and remember simple instructions and the "mental abilities critical for performing unskilled work" include the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods."  Unlike limitations in a claimant's ability to maintain concentration, POMS § DI 25020.010 emphasizes in regard to this limitation that "[t]hese requirements are usually strict."  Further, Dr. Valle's opinion, as an examining consultant, would typically be given more weight than the nonexamining psychological consultants' opinions.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all).  Thus, it was error for the ALJ to overlook Dr. Valle's assessed moderate limitation and fail to either incorporate it into the RFC assessment or adequately explain why he did not.  *Haga*, 482 F.3d at 1208 (an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment*); see also* SSR 96-8p, 1996 WL 374184, at *7 (an ALJ

---

Castro, Psy.D., assessed that based on the overall evidence, Ms. Lovato had no more than mild limitations in all work-related mental abilities.  Tr. 84-85.

"must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").

Lastly, the Commissioner's argument that Dr. Valle was not qualified to assess moderate limitations in Ms. Lovato's reliability and productivity due to Ms. Lovato's elbow pain amounts to post-hoc rationalization.[12]  *See Haga,* 482 F.3d at 1207-08 ("this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").  And although Ms. Lovato did not allege a mental impairment in her application, the ALJ nonetheless determined Ms. Lovato's adjustment disorder with mixed anxiety and depressed mood to be nonsevere.  Tr. 17.  As such, the ALJ was required to consider limitations and restrictions imposed by *all* of Ms. Lovato's impairments, including those that are not severe.  *See* SSR 96-8p, 1996 WL 374174, at *5.

For the foregoing reasons, the Court finds that the ALJ erred when he accorded great weight to Dr. Valle's opinion yet failed to explain why he rejected the moderate limitation she assessed as to Ms. Lovato's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods due to elbow pain.

### B.    Remaining Issues

The Court will not address Ms. Lovato's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[12] The Commissioner cites *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), for the premise that a psychologist cannot opine on a claimant's ability to work due to a physical impairment.  Doc. 21 at 11.  Here, however, Dr. Valle was not opining on exertional limitations related to Ms. Lovato's bilateral lateral epicondylitis, but on nonexertional limitations related to Ms. Lovato's pain; *i.e.,* on her ability to carry out work-related mental activities.  Tr. 465-69. *See Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir.1988) (pain can be either an exertional or nonexertional limitation or both).

## IV.  <u>Conclusion</u>

For the reasons stated above, Ms. Lovato's Motion to Reverse and Remand for a

Rehearing With Supporting Memorandum (Doc. 19) is **GRANTED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**